1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11   **NEW YORK LIFE INS. CO.,**                    **CIV. NO. 06-CV-1022-B (BLM)**

12                            **Plaintiff,**        **ORDER DENYING**
                                                    **DEFENDANTS' CROSS**
13          **vs.**                                 **MOTIONS FOR SUMMARY**
                                                    **JUDGMENT**
14   **ILDEFONSO MORALES, ALICIA A.**
     **RUIZ DE MORALES, and JUAN**                  **[Docket Nos. 26 & 44]**
15   **JAVIER LOPEZ,**

16                          **Defendants.**

17

18          After Plaintiff New York Life Insurance Co. was discharged from this interpleader

19   action, the remaining Defendants filed cross motions for summary judgment to determine

20   who is entitled to the benefits of a life insurance policy.  The Court convened several

21   hearings and allowed the parties to file supplemental briefs.  The Court incorporates its

22   remarks from the November 20, 2007 hearing into this written Order and denies both

23   motions.  The parties were instructed to consult with Magistrate Judge Major regarding any

24   discovery matters.  Thereafter, the case shall be set for a Pretrial Conference and a Bench

25   Trial.

26                                   Background

27          The insured Maria F. Lopez purchased a $100,000 life insurance policy from Plaintiff

28   New York Life and named her husband, Defendant Juan Javier Lopez, as the beneficiary.

1    She died on February 19, 1998 in Tijuana, Mexico.  Her parents, Defendants Ildefonso and

2    Alicia Ruiz Morales, contend that Juan Lopez is not entitled to benefit from the insurance

3    policy because he killed her.  They rely on California's "Slayer Statute."  Juan Lopez was

4    tried and convicted in a Mexican court for homicide in 2003; however, he contends that he is

5    innocent.

6                                                    Discussion

7    A.  California's "Slayer Statute"

8            Since 1905, California Probate Code's "Slayer Statute" has barred a killer from

9    collecting money from his victim's estate.  The current version of the statute provides that

10   "[a] named beneficiary of a . . . life insurance policy  . . . who feloniously and intentionally

11   kills the . . . person upon whose life the policy is issued is not entitled to any benefit under

12   the . . . policy . . . , and it becomes payable as though the killer had predeceased the

13   decedent."  Cal. Prob. Code § 252.

14           1.  Subsection (a):  When the Final Judgment is "Conclusive" Evidence

15           The first subsection of California's "Slayer Statute" states that "[a] final judgment of

16   conviction of felonious and intentional killing is conclusive for purposes of this part."  Cal.

17   Prob. Code 254(a).  If there is a final criminal conviction, the killer is not entitled to present

18   any evidence in the probate proceedings to dispute the finding of intentional homicide.

19   *Wilson v. Wilson*, 78 Cal.App.3d 226 (1978) (interpreting former § 258); *McGowan v.*

20   *Herman*, 35 Cal.App.3d 611 (1973) (under former § 258:   "It is reasonable to assume that

21   the Legislature meant to avoid a redetermination in civil proceedings of issues that had been

22   fully litigated in prior criminal proceedings.").

23           Although the parents submitted evidence of the husband's final conviction, those

24   criminal proceedings occurred in Mexico.  In 1978, the Ninth Circuit held that § 254(a) did

25   not apply to a foreign conviction so as to render it "conclusive" evidence.  *Haung Tang v.*

26   *Aetna Life Ins. Co.*, 523 F.2d 811 (9th Cir. 1975).[1]

27   _____

28           [1]There is an exception if comparable constitutional protections such as the right to

(continued...)

1          2. <u>Subsection (b):  Preponderance of Evidence Standard</u>

2          Because subsection (a) does not apply to Mexican judgment of conviction in this case,

3   the Court turns to subsection (b).  In 1984, some years after the *Huang Tang* decision, and in

4   accordance with the Uniform Probate Code, California added a new subsection to the "Slayer

5   Statute" that allows courts to determine whether the applicant is barred from inheriting a

6   victim's insurance proceeds in circumstances when the final judgment of conviction cannot

7   be treated as conclusive evidence.  Section 254(b) states:

8               (b) In the absence of a final judgment of conviction of felonious and
        intentional killing, <u>the court may determine by a preponderance of evidence</u>
9       <u>whether the killing was felonious and intentional</u> for purposes of this part.  The
        burden of proof is on the party seeking to establish that the killing was
10      felonious and intentional for purposes of this part.

11  Cal. Prob. Code § 254(b) (emphasis added).[2]  The Court will apply this subsection to the

12  competing claims for the life insurance proceeds of Maria Lopez.

13         Under this section, the court independently determines if the killing was felonious and

14  intentional.  Unif. Prob. Code § 2-803(g) (1993 Comment) (Probate Court is proper forum to

15  decide if killing was "felonious and intentional" to bar inheritance); *McGowan*, 35

16  Cal.App.3d at 618-19 (under former § 258 and citing Unif. Prob. Code, in absence of final

17  conviction "the court in any subsequent civil proceeding must independently examine the

18  facts in order to determine whether the defendant actually committed the offense") (footnote

19  omitted); *Kramme v. Kramme*, 20 Cal.3d 567, 571-72 (1978) (under former § 258, Probate

20  Court had authority to decide "independently" whether killing was intentional to forfeit

21  inheritance within plain meaning of statute); *e.g.*, *Davis v. Aetna Life Ins. Co.*, 279 F.2d 304

22  

23         [1](...continued)
24  counsel and jury were provided.  *Haung Tang*, 523 F.2d at 813 & nn.1-3. The parents
    provided a declaration of an American lawyer who has handled extradition matters and states
    that he is "generally familiar" with Mexican criminal law.  Decl. Morrison ¶ 3.  He states that
25  Mexico uses an "equivalent" standard of "beyond a reasonable doubt."  *Id.*  The parents have
    not provided sufficient information about the Mexican criminal procedure; thus, under
26  *Huang Tom*, § 254(a) does not apply to render the Mexican judgment "conclusive" evidence
27  but is only part of the evidence that may be considered.

         [2]Initially a California court had held that the Probate Court must use the beyond a
28  reasonable doubt standard, but the legislature expressly changed that standard to
    preponderance of the evidence.  *McGowan's Estate*, 35 Cal.App.3d 611.

1  (9th Cir. 1960) (under former § 258, court could use a properly supported summary judgment

2  to determine if conviction satisfied slayer statute); *Prudential Ins. Co. v. Harrison*, 106 F.

3  Supp. 419 (C.D. Cal. 1952) (district court independently examined evidence to determine

4  that killing was not intentional).  Pursuant to this subsection, the parties have submitted

5  portions of the trial transcript and various declarations to support their summary judgment

6  motions.

7  B.  <u>Summary Judgment Standard</u>

8   Because the parents are not named as beneficiaries in the policy, they bear the burden

9  of proving that the husband is not qualified to inherit the proceeds.  Cal. Prob. Code § 252(b).

10  At the September 10, 2007 hearing, the Court instructed the parents to submit the translated

11  portions of the Mexican record that supported their position that the husband intentionally

12  killed their daughter; and indicated that the husband could submit any additional portions that

13  supported his view of the evidence.  The husband has asked the Court to reconsider this

14  ruling so as to place the burden of proof solely on the parents.  The Court's ruling, however,

15  has been confirmed by a recent California case in a similar fact pattern.  *Principal Life Ins.*

16  *Co. v. Peterson*, 156 Cal. App. 4th 676 (2007).  There, the husband had been convicted of

17  killing his wife, but his conviction was not final due to a pending appeal and could not be

18  given conclusive effect for purposes of § 252(a).  The victim's parent invoked subsection (b)

19  of the "Slayer Statute" and filed a motion for summary judgment.  The Court of Appeal held

20  that when the moving party has carried its "burden of production, he causes a shift, and the

21  opposing party is then subjected to a burden of production of his own to make a prima facie

22  showing of the existence of a triable issue of material fact" – that is, that the husband "did

23  not feloniously and intentionally kill" his wife.  *Id.* at 687; *accord State Farm Ins. Co. v.*

24  *Smith*,  29 Ill.App.3d 942 , *aff'd in part*, 66 Ill.Dec. 838 (1975).

25   Summary judgment is appropriate when the "pleadings, depositions, answers to

26  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

27  no genuine issue as to any material fact and that the moving party is entitled to judgment as a

28  matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A

fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden either by presenting evidence that negates an essential element of the non-moving party's case or by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.

Once the moving party meets this initial burden, however, an adverse party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, all inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

C. <u>Analysis</u>

The parents submitted portions of the Mexican Judge's decision, in which he discusses the evidence showing that Juan Lopez intentionally killed his wife.  However, Juan Lopez submitted a sworn declaration in which he states:  "I did not kill my wife Maria F. Lopez and I am totally innocent regarding her homicide on February 19, 1998."  Ex. 2, ¶ 1  to Def.'s Notice of Lodgment (Decl. of Juan Lopez).  Lopez claims he "found my wife covered with blood" when he returned home for lunch and he immediately called the paramedics. *Id.* ¶ 4.  Lopez reports that the trial judge in Mexico disregarded DNA evidence that did not

1  match him.  *Id.* ¶ 5.  Lopez further notes that the Mexican court did not have any direct

2  evidence linking him to the murder, for example, Lopez alleges that one of the weapons was

3  from outside the household.  *Id.* ¶ 6.

4         The nonmoving party can defeat a summary judgment with his own affidavit when it

5  states facts within his personal knowledge.  *Celotex*, 477 U.S. at 324; *United States v.*

6  *Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999) (a party's declaration can often be self-

7  serving, but "properly so, because otherwise there would be no point in his submitting it").

8  The Court cannot, in the context of a summary judgment motion, disregard Lopez's sworn

9  affidavit that he did not kill his wife because the Court cannot make a credibility

10  determination.  *Anderson*, 477 U.S. at 225 ("The evidence of the non-movant is to believed,

11  and all justifiable inferences are to be drawn in his favor."); *Berry v. Baca*, 379 F.3d 764, 769

12  (9th Cir. 2004).  Accordingly, the disputed facts must be resolved in trial.  *Anderson*, 477

13  U.S. at 225 (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 257 (1948) (good judicial

14  administration may require a case to be resolved on a thorough and solid findings)).

15                                            Conclusion

16         Upon due consideration of the memoranda and exhibits, the arguments of counsel, and

17  for the reasons set forth above, the Court DENIES Defendants' motions for summary

18  judgment [# 26 & 44].  The parties shall discuss any outstanding discovery issues with the

19  Magistrate Judge, and an amended Scheduling Order will follow.  Because the parties waived

20  their rights to demand a jury, the case will be set for a bench trial.

21         IT IS SO ORDERED.

22  DATED:  December 10, 2007

23

24                                            Hon. Rudi M. Brewster
                                              United States Senior District Judge
25

26

27

28

- 6 -                                                                    06CV1022