UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY, <br><br>              Plaintiff,<br>v.<br><br>ILDEFONSO MORALES, ALICIA A. RUIZ de MORALES and JUAN JAVIER LOPEZ,<br><br>              Defendants. | Civil No. 06cv1022-B(BLM)<br><br>**ORDER DENYING DEFENDANT LOPEZ' MOTION REQUESTING REOPENING OF DISCOVERY IN ORDER TO DEPOSE THE MORALES DEFENDANTS' PROPOSED TRIAL WITNESSES**<br><br>**[Doc. No. 126]** |

On June 9, 2008, Defendant Lopez filed a motion entitled "Motion Requesting Reopening of Discovery in Order to Depose the Morales Defendants' Proposed Trial Witnesses." Doc. No. 126 ("Lopez Mot."). The Morales Defendants filed a timely opposition on June 19, 2008. Doc. No. 128 ("Morales Opp'n"). Thereafter, the Court took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). Doc. No. 129.

Having reviewed the briefing submitted, and for the reasons set forth below, Defendant Lopez' motion is **DENIED**.

///
///

## BACKGROUND

This interpleader action was filed on May 10, 2006, in order to determine the proper beneficiary of life insurance proceeds from a policy on the life of Maria F. Lopez ("the decedent"). See Doc. No. 1. The policy named the decedent's spouse, Defendant Juan Javier Lopez, as the sole beneficiary. Id. ¶ 7. However, before Plaintiff New York Life Insurance Company became aware of the decedent's passing and any potential claims to the insurance proceeds, Defendant Lopez was convicted by a Mexican court of murdering his wife. Id. ¶ 8. Defendant Lopez remains incarcerated in Mexico as a result of this conviction. Id.

In light of California Probate Code § 252, which prohibits a killer from collecting the proceeds of a life insurance policy on the life of his victim, Plaintiff believed that the decedent's parents, Ildefonso Morales and Alicia A. Ruiz de Morales, might claim the insurance proceeds as the decedent's surviving heirs. Id. ¶ 11. Given the Defendants' conflicting claims to the policy proceeds, Plaintiff filed this action and deposited proceeds totaling $140,197.71 with the Court. Id. ¶ 12. On October 13, 2006, the district judge discharged Plaintiff from the case. Doc. No. 23.

Defendant Lopez and the Morales Defendants pursued their respective claims to the insurance proceeds. On November 17, 2006, this Court issued a scheduling order setting June 18, 2007, as the deadline for completing all discovery in the case. Doc. No. 28. Prior to the close of discovery, the defendants filed cross-motions for summary judgment. Doc. Nos. 26 & 44. On December 10, 2007, the district judge denied both motions for summary judgment and

1  instructed the parties that the case would be set for a bench trial.
2  Doc. No. 89.  In the same order, the district judge authorized
3  additional discovery, with deadlines to be set by this Court.  Id.
4  For that reason, and based upon all of the defendants'
5  representations regarding how much additional time they would need
6  to conduct discovery, this Court set a new discovery cut-off date of
7  March 21, 2008.  Doc. No. 92.
8      In the motion presently before the Court, Defendant Lopez
9  asks the Court to reopen the discovery period that ended on March
10 21, 2008, and allow him to conduct three additional depositions.
11 Lopez Mot. at 1-2.

**LEGAL STANDARD**

13     Dates set in a scheduling order may be modified "for good
14 cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); Doc.
15 No. 92 (scheduling order stating that dates may be modified for
16 "good cause").  The Rule 16 "good cause" standard focuses on the
17 "reasonable diligence" of the moving party.  Noyes v. Kelly
18 Services, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); Coleman v. Quaker
19 Oats Company, 232 F.3d 1271, 1294 (9th Cir. 2000) (Rule 16(b)
20 scheduling order may be modified for "good cause" based primarily on
21 diligence of moving party).  Diligence should not be confused with
22 carelessness, which offers no reason for a grant of relief.  Johnson
23 v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).
24 "If [the moving] party was not diligent, the inquiry should end."
25 Id.
26 ///
27 ///
28 ///

**DISCUSSION**

Defendant Lopez requests that the Court reopen discovery so that he may depose Defendant Ildefonso Morales and non-parties Claudia Yvette Morales and Jean Carlo Morales. Lopez Mot. at 1. He argues that good cause for his request exists because the Morales Defendants only recently disclosed these three trial witnesses in the joint pretrial order. Id. at 1-2. Because he contends the naming of these three individuals as trial witnesses runs contrary to the Morales Defendants' answers to Defendant Lopez' written discovery, Defendant Lopez submits that he was very surprised by these late disclosures. Id. at 2. Prior to filing the instant motion, Defendant Lopez' counsel attempted to solicit these witnesses' addresses and intended testimony from opposing counsel on an informal basis, but to no avail. Id. at 10-13.

In response, the Morales Defendants assert that Defendant Lopez has known the identities of these individuals for a long time because they were his in-laws. Morales Opp'n at 2. Ildefonso Morales is the father of the decedent, Maria Lopez, and is a named party in this case. Id. Claudia Yvette Morales Serrano and Jean Carlo Morales are the sister and brother, respectively, of the decedent. Id. Additionally, both Claudia Yvette Morales Serrano and Jean Carlo Morales filed declarations in this case on February 9, 2007, as part of the Morales Defendants' opposition to Defendant Lopez' motion for summary judgment. Id. at 2; Doc. Nos. 45-3 & 45-4. In regard to why the Morales Defendants listed these individuals as potential trial witnesses in the proposed pretrial order, the Morales Defendants claim that they listed Ildefonso Morales because attorney Sanchez, who is counsel for Defendant Lopez, refused to

admit that Mr. Morales was the decedent's father. Morales Opp'n at 2. The brother and sister were listed in an abundance of caution as impeachment witnesses in order to respond, if necessary, should Defendant Lopez' deposition transcript be admitted at trial. Id. And, because they will testify only as impeachment witnesses, the Morales Defendants contend that they had no duty to disclose these witnesses, their addresses, or the contents of their testimony. Id. at 3 (citing Fed. R. Civ. P. 26(a)(3)(A)).

Since the beginning of this case, the fundamental issue has been whether Defendant Lopez feloniously and intentionally killed his wife and, therefore, should be barred from recovering the proceeds of her life insurance policy. As Judge Brewster explained in his order denying the Defendants' cross-motions for summary judgment, the California Probate Code's "Slayer Statute" bars a killer from collecting money from the victim's estate. Doc. No. 89. Specifically, the statute provides that:

> A named beneficiary of a ... life insurance policy ... who feloniously and intentionally kills ... the person upon whose life the policy is issued is not entitled to any benefit under the ... policy ... and it becomes payable as though the killer had predeceased the decedent.

Cal. Prob. Code § 252. In most cases, "[a] final judgment of conviction of felonious and intentional killing is conclusive for purposes of this [statute]." Cal. Prob. Code § 254(a). However, if the conviction occurred in a foreign country, as it did in this case, the Ninth Circuit has held that the conviction cannot be considered conclusive evidence. See Haung Tang v. Aetna Life Ins.

///
///

Co., 523 F.2d 811 (9th Cir. 1975)[1]. Where the foreign conviction does not serve as conclusive evidence, "the court may determine by a preponderance of evidence whether the killing was felonious and intentional."[2]  Cal. Prob. Code § 254(b).  Thus, Defendant Lopez' goal since the onset of litigation presumably has been to cast doubt on the validity of the Mexican conviction and the evidence that implicates him in the murder.

This Court's analysis of whether Defendant Lopez has demonstrated good cause for reopening discovery at this extremely late date, therefore, turns on *when* Defendant Lopez learned of the three new proposed deponents and their potential knowledge of anything that would cast doubt on the validity of the evidence or the Mexican conviction *and* whether he pursued this discovery in a reasonably diligent manner.  See Noyes, 488 F.3d at 1174 n.6 (Rule 16(b)'s "good cause" standard focuses on the "reasonable diligence" of the moving party); Coleman, 232 F.3d at 1294 (same).  As an initial matter, Defendant Lopez cannot plausibly claim that he was unaware of the existence of these individuals because they were his father-in-law, sister-in-law, and brother-in-law.  While it appears to be undisputed that the decedent's father, sister and brother did not witness the murder, it certainly is foreseeable that one or all of them might have discoverable information relevant to Defendant Lopez' legal theory that the Mexican conviction was invalid.  In

---

[1] This case does discuss one exception that may render a foreign conviction "conclusive" evidence, but Judge Brewster found that the Morales Defendants had failed to provide sufficient evidence that this exception applies in this case.  Doc. No. 89 at 2 n.1.

[2] In this case, Judge Brewster will make that determination during a bench trial.

1  fact, Defendant Lopez alleged in pleadings filed as early as October
2  4, 2006, that Jean Carlo Morales was affiliated with the political
3  team of the Mexican judge who convicted Defendant Lopez and that he
4  used his influence with the judge to secure Defendant Lopez'
5  conviction.  <u>See</u> Doc. No. 14-2 at 4.  The decedent's family members
6  also likely would have knowledge about the decedent's associations
7  and activities - information that would be relevant in trying to
8  establish, for instance, that another individual had a motive to
9  kill Defendant Lopez' wife.  In other words, these potential
10 deponents' identities and possible bases for having knowledge of
11 relevant facts were all known extremely early in the case, if not
12 prior to its filing.

13      Insofar as it appears plain that Defendant Lopez knew of
14 these witnesses and their potential as sources of discoverable
15 information, he could have noticed their depositions at any time.
16 The fact that he chose not to do so within the initial or
17 supplemental discovery periods shows a lack of reasonable
18 diligence.³  In fact, Defendant Lopez has not provided any evidence

---

³ Defendant Lopez attempts to support his claim that he was caught by surprise by the Morales Defendants' designation of these three trial witnesses by pointing to the fact that on January 22, 2008, he served Mr. Morales with a special interrogatory requesting that they "[p]lease identify all persons whom you expect to call as witnesses to testify at trial, including the name, address and telephone number of such witnesses." <u>See</u> Doc. No. 130 at 14 (using Court page numbering at top of page), Special Interrogatory No. 21.  Defendant Lopez also asked in the next special interrogatory "[f]or each witness that you expect to testify at trial, state with specificity the anticipated testimony of each witness."  Doc. No. 126-3 at 34 (using Court page numbering at top of page), Special Interrogatory No. 22.  In response to both special interrogatories, the Mr. Morales responded: "Objection: This question is not reasonably calculated to lead to the discovery of admissible evidence, and violates the attorney work-product doctrine.  Preparation for trial has not yet begun and is not a matter

indicating that he *ever* formally noticed the depositions of any of these witnesses. And, even assuming *arguendo* that he only learned for the first time about the decedent's sister when she filed her declaration on February 9, 2007, he still would have had over four months to notice her deposition before the original June 18, 2007 discovery cut-off date. Furthermore, Judge Brewster afforded Defendant Lopez a second opportunity to conduct these three depositions when he reopened discovery following his denial of the summary judgment motions. At that time, this Court expressly asked Defendant Lopez what additional discovery was necessary and how long he needed to conduct the discovery.[4] Counsel told this Court that he wanted two months to conduct the remaining discovery. In an abundance of caution, this Court extended the time period by an

---

within responding party's knowledge." Doc. No. 130 at 14; Doc. No. 126-3 at 34.

While it initially seems compelling, Defendant Lopez' argument obscures the relevant analysis. By January 22, 2008, Defendant Lopez already knew of the existence of the three proposed deponents and their relationship to the decedent. If Defendant Lopez wanted to know if they had any relevant and discoverable evidence, he could have noticed their depositions at any time during the discovery period. His failure to do so does not warrant reopening discovery now. Mr. Morales also did not mislead Defendant Lopez because he did not indicate that he would *not* call himself or his daughter or son as witnesses at trial. Furthermore, if Defendant Lopez was unsatisfied with Mr. Morales' February 19, 2007 responses to Special Interrogatory Nos. 21 and 22, he could have filed a motion to compel supplemental responses within the time period set by this Court for doing so. See Doc. No. 92 at 2. He did not. Thus, the Court finds that Defendant Lopez' failure to pursue either path during the discovery periods dramatically undercuts his surprise and reasonable diligence arguments.

[4] In his December 10, 2007 "Status Report," counsel for Defendant Lopez stated that "[a]dditional [d]iscovery anticipated may be the deposition of the Morales Defendants." Doc. No. 90 at 2. Thus, counsel cannot now argue six months later that it is a complete surprise that Mr. Morales might have discoverable information.

additional month and provided Defendants with a three-month supplemental discovery period. Doc. No. 92. Thus, the Court finds that Defendant Lopez had ample notice of these witnesses and more than enough time in which to depose them and has not demonstrated good cause for his failure to do so.

Additionally, the Morales Defendants' alleged failure to disclose these witnesses earlier or to provide their contact information and anticipated testimony does not provide the requisite good cause for modifying the scheduling order. The decedent's sister and brother were listed in the Morales Defendants' proposed pretrial order as impeachment witnesses and the Federal Rules of Civil Procedure expressly exempt from both the initial and pretrial disclosure requirements witnesses to be used solely for impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i) & (3)(A). Thus, the Morales Defendants had no duty to disclose these individuals and the fact that they are listed in the Morales Defendants' proposed pretrial order has no bearing on the instant motion.

As for Ildefonso Morales, neither party attached a copy of the Morales Defendants' initial disclosures to their pleadings, so this Court cannot confirm whether or not he was disclosed in the initial disclosures. But, even if he was not, Defendant Lopez did not timely move to compel or seek other relief once he learned of the Morales Defendants' alleged omission and he may not seek such relief now. Furthermore, "[i]nitial disclosures under Federal Rule of Civil Procedure 26(a)… are designed to facilitate the parties' understanding of the case early on and to inform the appropriate scope of discovery." Neothermia Corp. v. Rubicor Med., Inc., 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004). Given that the purpose of

initial disclosures is to make other parties aware of potential sources of discoverable information and the general nature of that information, Fed. R. Civ. P. 26(a)(1)(A)(i), it hardly can be said that Defendant Lopez suffered any prejudice as a result of the Morales Defendants' alleged failure to disclose Mr. Morales. Mr. Morales was Defendant Lopez' father-in-law and both the Complaint and the Morales Defendants' Answer identify Mr. Morales as the decedent's father and a resident of San Diego. As such, Defendant Lopez was aware even before initial disclosures were due of Mr. Morales' existence and his relationship to the case. Moreover, as noted above, counsel for Defendant Lopez anticipated deposing Mr. Morales as early as December 10, 2007 and yet failed to do so. See Doc. No. 90 at 2. His decision not to depose Mr. Morales during the discovery period does not justify reopening discovery now. Johnson, 975 F.2d at 609.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Lopez has not pursued discovery in a reasonably diligent manner and has failed to demonstrate good cause for this Court to modify its scheduling order and reopen discovery. Defendant Lopez' motion, therefore, is **DENIED**.

**IT IS SO ORDERED.**

DATED: July 1, 2008

*Barbara L. Major*

BARBARA L. MAJOR
United States Magistrate Judge

1  COPY TO:

2  HONORABLE RUDI M. BREWSTER
   UNITED STATES DISTRICT JUDGE
3
   ALL COUNSEL AND PARTIES
4